UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCEDES MOORE,

                      Plaintiff,

        -against-

CITY OF NEW YORK, NEW YORK
CITY DEPARTMENT OF EDUCATION,
SAUNDRA KASE, LAURA
GALLOWAY, AND OLIVIA
HAMILTON,

                     Defendants.

**MEMORANDUM OPINION
AND ORDER**

08 Civ. 8879 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        The complaint in this action was filed on October 16, 2008, and seeks

damages and other relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e et seq., ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621

et seq. ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.

("ADA"); the New York State Human Rights Law ("NYSHRL"), Executive Law §§ 296

et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq.;

and 42 U.S.C. § 1983.  Plaintiff Mercedes Moore alleges employment discrimination

based on age and disability, retaliation, and violations of her right to due process and

equal protection under the Fifth and Fourteenth Amendments of the United States

Constitution.  (Cmplt. ¶ 1)  On April 21, 2009, Defendants filed a motion to dismiss

based on a variety of federal and state procedural bars and Moore's failure to state a

claim on which relief can be granted.  (Docket No. 18)  For the reasons set forth below,

Defendants' motion to dismiss will be GRANTED.

## BACKGROUND

Moore was employed by the New York City Department of Education ("DOE") between 1978 and August 2007, when she was terminated from her position as a tenured teacher at P.S. 49 in the Bronx.  (Cmplt. ¶ 30, 44)  At the time of Moore's termination, Defendant Saundra Kase was employed as the Superintendent of District 85 – which includes P.S. 49 – and Defendants Laura Galloway and Olivia Hamilton were P.S. 49's principal and assistant principal.  (Cmplt. ¶ 8)

There is long history of litigation between the parties, including a nineteen-day disciplinary hearing conducted between 2005 and 2007 pursuant to Education Law § 3020-a, several other administrative proceedings, and three prior court actions.  In all of these proceedings, Moore has alleged – unsuccessfully – that she was the victim of unlawful discrimination during her DOE employment.

In 2001, Moore suffered serious injuries after falling on a wet floor at her school.  (Id. ¶ 36-38)  She received ongoing treatment for these injuries, and missed work for nearly a year.  (Id. ¶ 42)  She returned to work in August 2002 (id.) but had to undergo hip replacement surgery in August 2006.  (Id. ¶ 39)

On June 25, 2003, the DOE served Moore with ten specifications of misconduct committed during the 2002-03 school year, including excessive absences, insubordination, incompetent or inefficient services, and neglect of duties.  (Def. Ex. B at 2-8).  On August 28, 2003, Moore was terminated without a hearing, although she had requested a hearing pursuant to Education Law § 3020-a.  (Def. Ex. A at 2)

On December 18, 2003, Moore commenced an Article 78 proceeding in Supreme Court for the State of New York challenging her termination and alleging that

she was improperly dismissed without a hearing.  (Id. at 3)  On May 24, 2004, the state

court annulled Defendants' decision to terminate Moore, reinstated her with back pay and

benefits, and remanded the matter for a hearing pursuant to § 3020-a.  (Id.)  The § 3020-a

hearing began on July 11, 2005, but Moore asserted she could not participate in the

proceedings because of a foot condition and lack of health insurance.[1]  She petitioned for

a stay of the hearing based on her disability, but the state court denied that request on

February 17, 2006.  (Def. Ex. C)  The disciplinary hearing proceeded despite Moore's

repeated absences, and on August 13, 2007, the hearing officer found Moore guilty of

many of the DOE's specifications of misconduct and ruled that termination was

appropriate.  (Def. Ex. B at 27-28 ("the proven charges against [Moore] were so serious,

often intentional, and egregious that her termination is justified"))  Moore received notice

of the § 3020-a decision on August 20, 2007.  (Def. Ex. G, 11/29/07 Appeal)

     Moore filed a petition to overturn the § 3020-a decision in state court,

claiming that she had been denied due process and that she had been discriminated

against at work.  (Def. Ex. D; Ex G)  Moore argued that the § 3020-a hearing was held

without her knowledge or participation on several occasions while she was on medical

leave from work.  (Ex. D at 2)  The DOE cross-moved to dismiss the petition, and on

June 13, 2008, the state court granted the DOE's motion, holding that the hearing

officer's decision "was neither arbitrary nor capricious."  (Id. at 6).

     On August 19, 2004, before the § 3020-a hearing had begun, Moore filed

her first federal action, alleging that the DOE and Defendants Galloway, Kase and

---

[1] Her health insurance was restored by DOE in October 2005, retroactive to September
2005.  (Def. Ex. C)

Hamilton had violated her rights under 42 U.S.C. §§ 1981, 1982, and 1983, the ADEA, and the ADA.  Moore v. New York City Dep't of Education, et al., No. 04 Civ. 6739 (PKC) ("First Federal Action") (Def. Ex. E).  Moore alleged that Defendants had failed to accommodate her disability by assigning her to certain classrooms, and that her August 2003 termination was retaliation for a complaint she had filed with the New York State Division of Human Rights ("SDHR") in December 2002.  (Id.)  On March 24, 2006, Judge Castel dismissed the action with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b).  (Def. Ex. F)

On March 7, 2006, during the pendency of the First Federal Action and § 3020-a hearing, Moore filed a second charge of discrimination with the SDHR, alleging that the DOE had discriminated against her because of her age and disability and had failed to accommodate her disability by assigning her to work at a Regional Operation Center in Manhattan, and then in Brooklyn, in February 2005 after her reinstatement. (Def. Ex. H)  SDHR dismissed Moore's complaint on August 14, 2008, finding no probable cause.  Moore v. City of New York DOE, Determination and Order After Investigation, SDHR Case No. 10110575 (Def. Ex. I).

After the state court dismissed Moore's petition to vacate the § 3020-a hearing decision, Moore filed a charge with the EEOC alleging that her August 2007 termination constituted age and disability discrimination and unlawful retaliation for the prior proceedings she had initiated.  (Def. Ex. J)  The EEOC dismissed the charge as untimely and issued Moore a right to sue letter on July 16, 2008. (Def. Ex. L)  Moore filed the instant action on October 16, 2008.

## **DISCUSSION**

### I.    **LEGAL STANDARD**

"To survive a motion to dismiss," a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In making this determination, a Court must be mindful of two corollary rules.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  (citing Twombly, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1950 (citing Twombly, 550 U.S. at 556).  The Supreme Court has stated that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (citation omitted).

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The following documents are properly before the Court because they were incorporated by reference in the complaint:  (1) the state court order annulling Moore's August 2003 termination (Def.

Ex. A); (2) the § 3020-a hearing decision (Def. Ex. B); (3) the state court dismissal of

Moore's petition to overturn the § 3020-a hearing (Def. Ex. C); (4) the August 3, 2004

complaint in the First Federal Action (Def. Ex. E); (5) Judge Castel's order dismissing

the First Federal Action under Rule 41(b) (Def. Ex. F); (6) Moore's appeal of the § 3020-

a hearing decision (Def. Ex. G); (7) the March 21, 2006 SDHR complaint (Def. Ex. H);

(8) the August 14, 2008 SDHR determination and no probable cause finding (Def. Ex. I);

(9) the June 2003 EEOC charge (Def. Ex. K); (10) the July 16, 2008 EEOC dismissal and

right to sue letter (Def. Ex. L); and (11) excerpts from the § 3020-a hearing transcript

(Def. Ex. L).

## II.    DEFENDANTS' MOTION TO DISMISS

Defendants argue that the Complaint must be dismissed because:  (1)

Moore's claims for pre-August 19, 2004 conduct are barred under the doctrine of res

judicata; (2) Moore's federal statutory claims are time-barred; (3) Moore is collaterally

estopped from asserting her federal claims based on the outcomes of the administrative

and state court proceedings; (4) Moore has not stated a substantive due process claim; (5)

Moore's equal protection claims are preempted by the ADEA, the ADA, and the

Rehabilitation Act, 29 U.S.C. §§ 701 et seq.; (6) with respect to Moore's Section 1983

claims against the City and the DOE, she has failed to plead that an official policy or

custom contributed to the alleged violations; (7) with respect to Moore's Section 1983

claims against the individual defendants, they are entitled to qualified immunity; and (8)

Moore's state and city claims are barred by the Education Law's notice of claim and

statute of limitations provisions.

The Court finds that the Complaint must be dismissed in its entirety for

numerous reasons including:  (1) any claims relating to pre-August 19, 2004 conduct are

barred under the doctrine of res judicata; (2) Moore's federal claims under the ADA, the

ADEA, and Title VII are time-barred; (3) Moore was never employed by the City of New

York and there is no evidence that the City ever took any action that affected her

employment; (4) Moore's Monell claims against the City of New York and the DOE do

not identify any policy or custom which led to the violation of Moore's rights, nor are the

DOE employees named by Moore "final policymakers"; (5) the claims against the

individual defendants for post-August 19, 2004 conduct are insufficiently pleaded; and

(6) Moore's claims against the DOE under state and city law are barred by the applicable

notice of claim requirements and statute of limitations

### A.      Claims for Pre-August 19, 2004 Conduct are Barred by Res Judicata

Under the doctrine of res judicata, or claim preclusion, "a final judgment

on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94

(1980).  See also Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (res

judicata "prevents a party from litigating any issue or defense that could have been raised

or decided in a previous suit, even if the issue or defense was not actually raised or

decided").  Whether a claim is precluded depends on "whether the same transaction or

connected series of transactions is at issue, whether the same evidence is needed to

support both claims, and whether the facts essential to the record were present in the

first."  Id.

Defendants argue that "any claims or causes of action which were or could

have been raised in the First Federal Action are barred by the doctrine of res judicata."

(Def. Br. at 8)  The First Federal Action was dismissed under Rule 41(b), which

constitutes an adjudication on the merits, and "unless it is expressly stated to be without

prejudice, will generally bar a subsequent action on the claim under principles of res judicata." Charles v. City of New York, 2007 U.S. Dist. LEXIS 68712, *18-19 (S.D.N.Y. Sept. 14, 2007).

Moore admits that all claims accruing prior to the filing of the First Federal Action on August 19, 2004 are barred and "does not seek to re-litigate any events that occurred prior to August 19, 2004." (Opp. at 6) Moore states that "[a]ny mention of events prior thereto in the case at bar is for background information purposes only" (id.), and that the "gravamen of the case at bar begins in 2005, when plaintiff was transferred to a suspension site and when the § 3020-a hearing commenced. This fact pattern culminated in 2007 when plaintiff was dismissed." (Id.) Accordingly, to the extent that Moore's claims are predicated on pre-August 19, 2004 conduct, those claims will be dismissed under the doctrine of res judicata.[2]

Defendants argue that Moore's claims regarding her August 2007 termination are likewise barred by res judicata because "the termination is part of the same cause of action [as the First Federal Action] and arose from a 'single core of operative facts.'" (Reply at 2) Although Defendants have a strong argument that "the only facts which could support plaintiff's allegation of discrimination or retaliatory termination are the very acts [that] formed the basis of the First Federal Action – the alleged discrimination and retaliation by DOE officials in preferring § 3020-a charges against plaintiff" (Reply at 2) – the Court need not reach this issue. Because the Court

---

[2] The parties agree that res judicata does not bar Moore from pursuing claims related to "alleged discrimination in connection with plaintiff's assignment to suspension sites in Manhattan and Brooklyn from February to June 2005" or the "alleged denial of due process in connection with the § 3020-a proceedings from July 2005 to August 2007." (Reply at 1-2)

will dismiss Moore's claims for post-August 2004 conduct on the separate grounds set forth below, this issue is immaterial.

### B.     All Claims Against the Individual Defendants Must be Dismissed for Insufficient Pleading

To state a claim against the individual defendants under Section 1983, Moore must allege:  (1) that the allegedly unconstitutional conduct was attributable to someone acting under the color of state law; and (2) that this conduct deprived her of a right, privilege or immunity secured by the Constitution or laws of the United States. Rand v. Perales, 737 F.2d 257, 260 (2d Cir. 1984).  There is no dispute here that the individual defendants were acting under the color of state law and in the course of their employment.  Accordingly, the relevant question in determining the adequacy of the pleadings is whether Moore has pled any facts demonstrating that the individual defendants deprived Moore of her constitutional rights.

The Complaint, however, contains no factual allegations concerning the individual defendants with respect to post-August 19, 2004 conduct.  Indeed, the Complaint does not mention any of the individual defendants in connection with the alleged discriminatory acts experienced by Moore after that date, such as her assignment to certain work sites or her August 2007 termination.  The "mere conclusory statements" in Moore's complaint do not contain "sufficient factual matter" to sustain a claim against Defendants Kase, Galloway, and Hamilton.[3]  Iqbal, 129 S. Ct. at 1949-50.  Accordingly, Moore's Section 1983 claims against the individual defendants must be dismissed.

---

[3]  Because Moore has failed to state a claim against the individual defendants, the Court need not reach the issue of whether they are entitled to qualified immunity.

Moore's state and city law claims against the individual defendants must be dismissed for the same reason.[4]

> ### C.   Plaintiff's <u>Monell</u> Claims Must be<br>### <u>Dismissed for Failure to State a Claim</u>

Defendants argue that Moore's <u>Monell</u> claims against the City and the DOE "must be dismissed because she has failed to plead that the alleged violations were the result of an official policy or custom." (Def. Br. at 23) Moore contends, however, that the individual defendants – a superintendent, school principal, and assistant principal – are final policy makers "and that their actions and directions herein can bind the City and DOE and result in liability to them under § 1983." (Opp. at 16) See <u>Pembaugh v. City of Cincinnati</u>, 475 U.S. 469 (1986).

With respect to Moore's claim against the City, it is important to recognize that the City and the DOE are distinct governmental entities. Moore was an employee of the DOE and does not claim that she was ever employed directly by the City or that the City took any action that affected her employment. Case law makes clear that the City cannot be liable for the acts of the DOE or its employees. "While factual allegations must be construed in a light most favorable to the Plaintiff, the issue of whether or not DOE is a department of the City is a legal issue. In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it." <u>Falchenberg</u>, 375 F. Supp. 2d at 347; <u>see also</u> <u>Fierro</u>, 591 F. Supp. 2d

---

[4] Defendants argue that Kase and Hamilton were never served and thus are not parties to this action. (Def. Br. at 1 n. 3) The electronic docket sheet does not reflect service upon either Kase or Hamilton. Although failure to serve likely provides an independent basis for dismissal under Rule 4(m), the Court need not determine whether there is good cause for the delay or whether the docket sheet is accurate, because the Complaint fails to make out a claim against these defendants.

at 446 ("Courts in this circuit as well as the New York State courts have made clear that the City of New York and the DOE are separate legal entities.  Although amendments to the New York Education Law in 2002 provided for greater mayoral control over the DOE, the 'legislative changes do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the [DOE] and its employees, and the City [of New York] cannot be held liable for those alleged torts.'  Because plaintiff alleges acts committed by the DOE and its employees, the City of New York is not a proper party."); Perez v. City of New York, 2007 NY Slip Op 5657, 41 A.D.3d 378, 379 (1st Dep't 2007) (citing cases).  Accordingly, Moore's Section 1983 claims against the City must be dismissed.

With respect to Moore's Section 1983 claims against the DOE, those claims fail because Moore has not alleged any facts suggesting that the DOE's policies and practices led to a deprivation of Moore's constitutional rights, or that the act of a "final policy maker" caused such an injury.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 691.  "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by

the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. County of Monroe, 2009 WL 3617787, at *1 (2d Cir. Nov. 4, 2009) (citing Vives v. City of N.Y., 524 F.3d 346, 350 (2d Cir. 2008)). Allegations that a defendant acted pursuant to a "policy" or "custom" "without any facts suggesting the policy's existence, are plainly insufficient." Missel, 2009 WL 3617787, at *1.

        "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). "Where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," municipal liability under Section 1983 attaches. Id. However, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. Whether an official has final policymaking authority is a matter of state law. Id.

        Here, the Complaint does not allege any facts in support of Moore's allegation that the City or the DOE have a policy, practice, or custom that caused the alleged violations of Moore's constitutional rights. Moreover, Superintendent Kase, Principal Galloway, and Vice Principal Hamilton are not final policy makers for the DOE. Education Law § 2590-g and –h grant policy making authority over New York City schools to the Chancellor.[5] Moore cites no authority suggesting that superintendents, principals, or vice principals have such power, and her conclusory

_____

[5] "The city board shall advise the chancellor on matters of policy affecting the welfare of the city school district and its pupils. The board shall exercise no executive power and perform no executive or administrative functions." NY CLS Educ § 2590-g.

statements to that effect are insufficient to support her <u>Monell</u> claims.  (Opp. at 16)  In sum, because Moore fails to cite any DOE policy or custom which caused the deprivation of her constitutional rights, and fails to plead that the Chancellor was involved in the alleged violations of her constitutional rights, her claims against the DOE must be dismissed.

### D.        Plaintiff's ADA, ADEA and Title VII Claims are Time-Barred

Title VII, the ADEA, and the ADA require a plaintiff alleging discrimination to file a charge with the EEOC prior to instituting an action in federal court.  <u>Kubicek v. Westchester County</u>, No. 08-CV-372 (KMK), 2009 WL 3720155, *4 (S.D.N.Y. Oct. 8, 2009) ("Both Title VII and the ADEA require that a plaintiff file a charge with the EEOC prior to filing a federal court action.") (citing <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A.</u>, 274 F.3d 683, 686 (2d Cir. 2001) (<u>per curiam</u>)); <u>Kendall v. Fisse</u>, No. 00 Civ. 5154 (SJ), 2004 WL 1196811, *3 (E.D.N.Y. May 25, 2004) ("A Plaintiff seeking to bring an action under the ADA in New York State must file a charge with the Equal Employment Opportunity Commission ('EEOC') within 300 days of the alleged discriminatory act."); <u>see also</u> <u>Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.</u>, 990 F.2d 1397, 1401 (2d Cir. 1993).  Where a plaintiff has initially instituted state or local proceedings, as Moore did here, a charge of discrimination under Title VII, the ADEA, or the ADA must be filed with the agency charged with investigating such matters within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1).[6]  "It does not matter, for

---

[6] 42 U.S.C. § 12117(a) incorporates the 300-day filing requirements of Title VII found in 42 U.S.C. § 2000e-5(e)(1) (2004).

purposes of the statute, that some of the component acts fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the [claim] may be considered by a court for the purposes of determining liability."  AMTRAK v. Morgan, 536 U.S. 101, 117 (2002); see Nicoletti v. N.Y. City Dep't of Educ. Office of Legal Servs., No. 08 Civ. 11305(WHP), 2009 WL 4756508, *2 (S.D.N.Y. Dec. 7, 2009).  "The filing deadlines for a charge of discrimination act as a 'statute of limitations' and a failure to timely file a charge acts as a bar to a plaintiff's action."  Kubicek, 2009 WL 3720155, *4 (quoting Hill v. Citibank Corp., 312 F. Supp. 2d 464, 473 (S.D.N.Y. 2004)).

Because Moore filed her EEOC charge on June 23, 2008 (Cmplt. ¶15), only acts that took place after August 28, 2007 are within the 300-day filing window. Claims accruing prior to that date are time-barred.  The 300-day period "is triggered when a discrete unlawful practice takes place.  A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 628 (2007) (citing cases). A "discrete unlawful practice takes place" when a plaintiff receives notice of the discriminatory conduct, not when a discriminatory decision is implemented or when its effects are felt.  Del. State College v. Ricks, 449 U.S. 250, 258 (1980) (the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful"); Pearson v. Bd. of Educ., 449 F. Supp. 2d 575, 590 (S.D.N.Y. 2007) ("[T]he 300 day period starts to run when the claimant receives notice of

the allegedly discriminatory conduct, not when the allegedly discriminatory decision takes effect.").

Here, Defendants argue that the 300-day period commenced on August 20, 2007, when Moore received notice of the § 3020-a decision ordering her termination. (Def. Br. 11-12)  Moore argues, however, that the 300-day period commenced on August 28, 2007, four days after the DOE had mailed her an official letter of termination.  (Opp. at 9)  The EEOC closed its file in this case after determining that Moore's "charge was not timely filed with EEOC; in other words [she] waited too long after the date(s) of the alleged discrimination to file [the] charge."  (Def. Ex. L)

As discussed above, the case law makes clear that the relevant date for triggering the 300-day filing period is when a plaintiff receives notice of a discriminatory act, not when the effects of that act are felt.  See Del. State College v. Ricks, 449 U.S. at 258; Pearson v. Bd. of Educ., 449 F. Supp. 2d at 590.  Moore attempts to evade that authority by arguing that the § 3020-a decision is not self-executing and therefore is not the "last discriminatory act" triggering the running of the 300-day clock.  Id. (citing United Airlines v. Evans, 431 U.S. 553 (1977)).  The language of § 3020-a, however, makes clear that Moore's interpretation is mistaken.

Section 3020-a(4)(a) states that "[t]he hearing officer shall render a written decision within thirty days of the last day of the final hearing, or in the case of an expedited hearing within ten days of  such expedited  hearing, and shall forthwith forward a copy thereof to the commissioner of education who shall immediately forward copies of the decision to the employee and to the clerk or secretary of the employing board." Educ. L. § 3020-a(4)(a) (emphasis added).  Section 3020-a(4)(b) provides that

"[w]ithin fifteen days of the hearing officer's decision, the employing board shall implement the decision."  Educ. L. § 3020-a(4)(b).  Accordingly, the decision as to discipline is final once the hearing officer's decision is issued, and both notice to the employee and implementation of the hearing officer's decision are compulsory.  Under these circumstances, it is clear that the limitations period begins to run once the employee receives notice.

Ricks, 449 U.S. at 258, illustrates this point.  In Ricks, a tenure case, the Supreme Court considered the relationship between a decision to terminate and implementation of that decision for limitations purposes:  "the only alleged discrimination occurred – and the filing limitations periods therefore commenced – at the time the tenure decision was made and communicated to Ricks.  That is so even though one of the effects of the denial of tenure – the eventual loss of a teaching position – did not occur until later."  Ricks, 449 U.S. at 258 (emphasis in original); see also Economu v. Borg-Warner Corp. & Burns International Security Serv., Inc., 829 F.2d 311, 316 (2d Cir. 1987) (holding that employer's "express, explicit notice to [plaintiff's attorney of the employer's decision to discharge plaintiff] . . . must be considered, in the language of Ricks, to have 'established its official position – and made that position apparent'").  Here, Moore received notice of the decision ordering her termination on August 20, 2007, and that date – as opposed to the date she received her letter of termination – is what controls for limitations purposes.

Moore urges this Court to find that the limitations period was equitably tolled (Pl. Br. at 9), but she has alleged no facts demonstrating that equitable tolling of the 300-day filing limit is appropriate.  See e.g., Santiago v. Newburgh Enlarged City

<u>Sch. Dist.</u>, 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006) ("The statute of limitations can, of course, be equitably tolled, but the burden rests with plaintiff to prove her entitlement to a toll, and the burden is steep.  Plaintiff would have to prove both that she was incapable of meeting her obligations under the statute of limitations in a timely manner, and that her incapacity extended until March 10, 2006, when she filed her motion for leave to file a late notice of claim.  Plaintiff fails to meet that heavy burden.") (internal citation omitted).  Based on the record here, the Court cannot find that Moore "acted with reasonable diligence during the time period she seeks to have tolled" or that she has "proved that the circumstances are so extraordinary that the doctrine should apply." <u>Zerilli-Edelglass v. New York City Transit Auth.</u>, 333 F.3d 74 (2d Cir. 2003). Accordingly, Moore's ADA, ADEA, and Title VII claims will be dismissed as time-barred.

### E.   State and City Law Claims are Time-Barred under Education Law § 3813

Defendants argue that Moore's New York state and city law claims must be dismissed because she failed to comply with the notice of claim provision and statute of limitations set forth in Education Law § 3813(1) and (2-b).  (Def. Br. at 25)  State notice of claim requirements and statutes of limitations are substantive law that must be applied by federal courts in deciding pendent state and local law claims.  See <u>Felder v. Casey</u>, 487 U.S. 131, 151 (1988); <u>Promisel v. First American Artificial Flowers</u>, 943 F.2d 251 (2d Cir. 1991).  "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court."  <u>Promisel</u>, 943 F.2d at 257.

17

New York law requires that a plaintiff plead and prove compliance with Education Law § 3813's notice of claim and statute of limitations requirements in any action against the DOE or its officers.  Amorosi v. South Colonie Ind. Central Sch. Dist., 9 N.Y.3d 367 (2007); Stoetzel v. Wappingers Cent. School Dist., 166 A.D.2d 643 (2d Dep't 1990).  Education Law § 3813(1) requires potential plaintiffs to file a notice of claim with the governing body of the applicable school district within three months of claim accrual as a prerequisite to suit.  Section 3813(2-b) provides that the statute of limitations for any suit against the DOE or its officers is one year from the date of the claim's accrual.  See Amorosi, 9 N.Y.3d at 369.  The 90-day notice of claim requirement also applies to claims "against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or employee acting in the discharge of his duties within the scope of his employment. . . ."  Educ. L. §3813(2); Gen. Mun. L. § 50-e(2).[7]  See Gear v. Dep't of Educ., No. 07 Civ. 11102 (NRB), 2009 WL 484424 (S.D.N.Y. Feb. 24, 2009).  "The purpose of this provision is to accord a school district the opportunity to promptly investigate claims

_____

[7] Section 3813(2) requires that:

> No action . . . founded upon tort shall be prosecuted or maintained against any of the parties named in this section or against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher, or member, or employee acting in the discharge of his duties within the scope of his employment and/or under the direction of the board of education, trustee or trustees, or governing body of the school unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.

General Municipal Law 50-e, incorporated by § 3813, requires a plaintiff to file a notice of claim before commencing any action against a municipality and serve it within ninety days of claim accrual.  Gen. Mun. Law § 50-e.

which, if established, will obligate it to indemnify an employee." Radvany v. Jones, 184 A.D.2d 349, 349 (1st Dep't 1992). General Municipal Law § 50-k(3) states that the "duty to indemnify . . . shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." "Thus, it is only where the municipal entity has an obligation to reimburse its employee for the offending conduct that it must receive notice of the claim" against individual employees. Id. (citing Widger v Central School Dist. No. 1, 20 A.D.2d 296 (4th Dep't 1964); Stearns v Board of Educ., 137 N.Y.S.2d 711 (N.Y. Sup. Ct. 1955)).

Here, it is not disputed that Moore never filed a notice of claim, and – as discussed above – the Complaint was filed well after the expiration of the statute of limitations. Even crediting Moore's contention, rejected above, that her claims accrued as late as August 28, 2007 – when she received the termination letter – the 90-day period for filing a notice of claim and the one year statute of limitations had long passed by the time she filed the complaint in this action on October 16, 2008.

Moore argues that the Education Law statute of limitations and notice of claim requirements do not apply to her claims because "employment discrimination cases brought pursuant to the Executive Law are not tort actions and are, therefore, not subject to Notice of Claim requirements." (Opp. at 17). Moore's argument is erroneous. The cases she relies on do not involve claims against school-related entities or parties that fall within Education Law § 3813's scope.[8] Moreover, it is settled law in this district that

---

[8] Keating v. Gaffney, 182 F. Supp. 2d 278, 280 (E.D.N.Y. 2001) (complaint alleged violations of the ADA and NYSHRL against the Suffolk County Executive, the Commissioner of the Suffolk County Department of Public Works, the County of Suffolk, and the Suffolk County Department of Public Works); Pustilnik v. Hynes, No.

"employment discrimination is included within the umbrella of § 3813."  <u>Falchenberg v.</u>
<u>New York City Dep't of Educ.</u>, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005).  As the court
in <u>Biggers v. Brookhaven-Comsewogue Union Free School District</u>, 127 F. Supp. 2d 452,
454 (S.D.N.Y. 2001) stated in holding that § 3818 applied to a former school
administrator's claim for gender discrimination under Executive Law § 296:  "The New
York Court of Appeals has interpreted the statute as follows:  'The Legislature has
spoken unequivocally that no action or proceeding may be prosecuted or maintained
against any school district or board of education unless a notice of claim has been
presented to the governing body, and this court may not disregard its pronouncement.'"

"An exception does exist for actions that seek vindication of a public
interest."  <u>Falchenberg</u>, 375 F. Supp. 2d at 350 (citing <u>Biggers</u>,127 F. Supp. 2d 452;
<u>Kushner</u>, 285 F. Supp. 2d 314 (E.D.N.Y. 2003)), but Moore does not seek to vindicate
the public interest.  Her complaint seeks "an award of appropriate injunctive and
monetary relief, including an expungement of all discriminatory motivated records,
compensatory and punitive damages in an amount to be determined at trial with
appropriate interest thereon; attorney fees; expert fees; and costs and disbursements."

---

99 Civ. 4087, 2000 WL 914629, at *1 (E.D.N.Y. June 27, 2000) (complaint stated claims
"against District Attorney Charles Hynes, David Fader, and the New York City Civil
Service Commission [] alleging that [plaintiff's] employer, the Kings County District
Attorney's Office, discriminated against her based on her age, in violation of the [ADA
and NYSHRL].");  <u>Hamm v. New York City Office of the Comptroller</u>, No. 95 Civ.
6367(JFK), 1998 WL 92395, *1 (S.D.N.Y. Mar. 4, 1998) (plaintiff alleged claims of
employment discrimination under the ADEA, Title VII, the Fair Labor Standards Act, the
Equal Pay Act, and state law against the New York City Comptroller's Office, the
comptroller, and other city officials); <u>Dimonda v. New York City Police Dep't</u>, No. 94
CIV. 0840 (JGK), 1996 WL 194325, *1 (S.D.N.Y. April 22, 1996) (complaint filed by
New York City police officer, alleging violations of the Rehabilitation Act of 1973, 29
U.S.C. § 794 (a), and related state law claims against the New York City Police
Department and individuals employed by the Department).

(Prayer for Relief, Cmplt. ¶ a-m)  "These are private interests."  Falchenberg, 375 F.

Supp. 2d at 350.

   Accordingly, Moore's state and city law claims against the DOE and

Superintendent Saundra Kase are dismissed under § 3813(1) and (2-b).[9]  Defendants

Laura Galloway and Olivia Hamilton, however, who were employed as P.S. 49's

principal and assistant principal (Cmplt. ¶ 8), respectively, are not "officers" within the

scope of § 3813(1).[10]  Moore's claims against these defendants are subject to the three-

year statute of limitations that governs employment discrimination actions not covered by

§ 3813.  C.P.L.R. § 214(2); Baroor v. New York City Dep't of Educ., No. 06 Civ. 3965

(NG), 2009 WL 959537 (E.D.N.Y. Apr. 3, 2009).

   The state and city law claims against Defendants Galloway and Hamilton,

however, are still barred under § 3813(2) because Moore has not established that she

served a notice of her claims against them on the municipality within 90 days.  Because

---

[9]  Superintendents are "officers" within the scope of § 3813.  See Fierro v. City of New York, 591 F. Supp. 2d 431, 446-47 (S.D.N.Y. 2008), rev'd on other grounds by 2009 WL 2223067 (2d Cir. July 27, 2009) (finding that school district superintendents were "officers" within the meaning of § 3813(1)); DeRise v. Kreinik, 10 A.D.3d 381, 381, 780 N.Y.S.2d 773, 774 (2d Dep't 2004) (finding that § 3813's notice of claim provision applies to a suit against a superintendent).

[10]  Fierro, 591 F. Supp. 2d at 447 (holding that a principal of a non-"special school" is not an officer because "[§ 1983(1)'s] requirements apply to 'any officer . . . [of a] school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four.'  'Article 85 schools are statutorily designated special schools, including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws.'") (emphasis added); see also Richards v. Calvet, No. 99 Civ. 12172 (RJH)(MHD), 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (holding that § 3813(1) does not apply to claims against school principals because principals are not "officers" within the meaning of the statute); Williams v. City of New York, No. 99 Civ. 2697 (ARR)(LB), 2006 WL 2668211, at *25 (E.D.N.Y. Sept. 11, 2006) ("[T]he statute of limitations established by § 3813 does not similarly require the dismissal of plaintiff's claims against defendant [principal] as he is not a school, district, board of education [. . .] or any officer thereof.").

the complaint does not allege that Galloway and Hamilton engaged in "intentional wrongdoing or recklessness," or suggest that they acted outside the scope of their duties as principal and vice principal, § 3813(2)'s notice of claim requirements are fully applicable.

Moore has conceded that the only claims surviving the preclusive effects of res judicata involve her August 2007 termination and her assignment to temporary work sites in 2005. (Opp. at 6) Moore alleges that these actions were taken by "defendant DOE" and "defendants" respectively (Cmplt. ¶ 51, 69). Assuming arguendo that the individual defendants were involved in carrying out these allegedly discriminatory actions, their involvement would clearly be within the scope of their employment. See, e.g., Haberbush v. Christensen, 103 A.D.2d 996 (3d Dept. 1984) (notice of claim required where "the complaint allege[d] [individual defendant] was an employee and agent of defendant school district and alleges his acts to be attributable to the school district"). Indeed, the Complaint alleges that "Defendants Kase, Galloway and Hamilton, at all relevant times and in all their actions described herein, were acting under the color of law and pursuant to their authority as public officers" (Cmplt. ¶ 27) and goes on to state that "their actions may be said to represent municipal decisions." (Cmplt. ¶ 28) Because Moore fails to plead any specific, intentional acts of wrongdoing outside the scope of the individual defendants' duties, the state and city law claims against them must be dismissed.[11]

_____

[11] Moore argues that "defendants received actual notice of plaintiff's complaints in a timely fashion, in plaintiff's several prior proceedings," and that this alleged actual notice is sufficient to comply with § 3813 notice of claim requirements. Even accepting Moore's argument, however, her claims were filed outside the applicable statute of

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Docket No.

18) is GRANTED.  The Clerk of the Court is directed to close this case.  Any pending

motions are moot.

Dated: New York, New York                          SO ORDERED.
       March 1, 2010

                                               Paul G. Gardephe
                                               United States District Judge

---

limitations.  Accordingly, the Court does not reach the question of whether any
alternative form of notice upon the defendants was sufficient.  It is worth noting,
however, that the law concerning notice of claim is quite restrictive.  "[A] failure to
present a claim [to the proper party] within ninety days of its accrual is a fatal defect."
Bloom v. New York City Bd. of Educ., No. 00 Civ. 2728 (HBP), 2003 WL 1740528, at *
13 (S.D.N.Y. Apr. 2, 2003); see also Kaselaan & D'Angelo Assocs., Inc. v. City of New
York, No. 98 Civ. 7497 (DLC), 1999 WL 1067858, at *2 (S.D.N.Y. Nov. 23, 1999)
("Notice of claim requirements are strictly enforced, and failure to comply ordinarily
results in dismissal.").  "Moreover, the bulk of the case law in this district supports the
conclusion that EEOC claims do not satisfy the notice of claim requirement." Rodriguez
v. Int'l Leadership Charter Sch., No. 08 Civ. 1012 (PAC), 2009 WL 860622, *6
(S.D.N.Y. Mar. 30, 2009) (citing Santiago v. Newburgh Enlarged City Sch. Dist., 434 F.
Supp. 2d 193, 196 n.1 (S.D.N.Y. 2006) (collecting cases)).  Here, Moore does not even
plead that she served her SDHRL or EEOC complaints on the DOE.  See Amorosi, 9
N.Y.3d 367 (2007).